UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
CHRISTOPHER JIMENEZ, on behalf of himself,
individually, and all other persons similarly situated,

                         Docket No.:

               Plaintiff,

       -against-                     **COMPLAINT**

SOUTHWEST AIRLINES CO.,

                         Collective and Class Action

               Defendant.
--------------------------------------------------------------------X

       Plaintiff, Christopher Jimenez, on behalf of himself, individually, and all other persons similarly situated, by and through his counsel, the Law Office of Peter A. Romero PLLC, complaining of the Defendant, Southwest Airlines Co. ("Defendant" or "Southwest"), alleges as follows:

## NATURE OF THE CLAIM

       1.     Plaintiff Jimenez brings this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations ("NYLL"), unpaid wages stemming from Defendant Southwest's failure to pay Plaintiff wages for certain hours worked at his agreed upon rate of pay under the NYLL, damages for failure to issue timely payment of wages pursuant to NYLL § 191, damages for failure to provide accurate wage statements for each pay period under NYLL § 195(3), damages for claims of unjust enrichment and quantum meruit under New York common law, and any other claim(s) that can be inferred from the facts set forth herein.

       2.     Plaintiff Jimenez brings this lawsuit against the Defendant Southwest pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself,

individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.  Plaintiff Jimenez brings his claims for violations of the NYLL and New York common law on behalf of himself, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3.      Plaintiff Jimenez also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable six-year limitations period for those who suffered damages as a result of the Defendant Southwest's violations of the NYLL, the supporting New York State Department of Labor regulations, and for violations of New York common law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff Jimenez's state law claims pursuant to 28 U.S.C. § 1367.

5.      Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d).  This is a putative class action in which there are 100 or more members in the proposed class, any member of the proposed class is a citizen of a state and any defendant is a citizen of a different state, and the amount in controversy exceeds the sum of $5,000,000.00 in the aggregate.

6.      Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of New York.

## THE PARTIES

7.      Plaintiff Christopher Jimenez ("Plaintiff" or "Jimenez") is a resident of the County of Suffolk, State of New York.

8.      At all times relevant, Plaintiff Jimenez was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and New York Labor Law § 190(2), and a "manual worker" within the meaning of NYLL § 190(4).

9.      At all times relevant, Defendant Southwest Airlines Co. is and was a foreign business corporation incorporated in the State of Texas with a principal place of business located at 2702 Love Field Drive, Dallas, Texas 75235.

10.     At all times relevant, Defendant Southwest was subject to the requirements of the FLSA because it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to transporting luggage, commercial goods, laboratory specimens and materials, airmail cargo, freight, and other goods, purchasing and using of tools, mechanical parts, equipment, fuel for aircraft and other vehicles, tires for aircraft and vehicles, office supplies, pens, paper, and other tools, equipment and materials, and is regularly engaged in transporting goods and persons over and between state and international boundaries and to or from New York to other states or countries.  At all times relevant, Defendant Southwest accepted payment of money from banks and other sources outside of New York and Texas.

11.     At all times relevant, Defendant Southwest was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and New York Labor Law § 190(3).

3

12.     At all times relevant, Defendant Southwest employed more than ten people at any given time.

## FACTS

13.     Defendant Southwest is a nationwide and international airline carrier engaged in transporting people and goods to numerous destinations throughout the United States and the world from its 121 airports across 11 countries.

14.     Defendant Southwest operates as many as 4,000 flights per day and transports as many as 130 million passengers and their luggage each year, making Southwest the nation's largest United States-based airline carrier.  During the period of 2016 through 2022, Southwest operated between nearly 900,000 and 1.36 million flights every year.

15.     Defendant Southwest employs more than 56,000 employees throughout its operations.

16.     In addition to passenger luggage and cargo, Defendant Southwest also regularly transports commercial cargo, laboratory specimens and materials, airmail cargo, freight, and other commercial goods on its nationwide and international flights.

17.     In 2019, the most recent year available, Defendant Southwest transported more than 158 million pounds of cargo.

18.     Defendant Southwest regularly transports luggage, passenger cargo, commercial cargo, laboratory specimens and materials, airmail cargo, freight, and other commercial goods across state lines between New York and other states or territories, and between New York and foreign countries.

19.     Throughout the period of 2012 through 2022, Defendant Southwest received gross annual revenue of between $9.04 million and $22.4 million each year.

20.     During the first two quarters of 2022, Defendant Southwest reports that it received revenue of $11.4 billion.

21.     Defendant Southwest operates terminals within New York at Macarthur Airport in Long Island, Buffalo/Niagara Falls, Rochester, Syracuse, Albany, and Laguardia Airport in Queens.

22.     Defendant employed Plaintiff Jimenez as a non-exempt ramp agent beginning on or about March 7, 2022.  As of this filing, Plaintiff Jimenez remains employed.

23.     Throughout his employment, Plaintiff Jimenez regularly worked five days per week, typically Thursday through Monday, from 4:00 p.m. until at least 12:30 a.m., during which Plaintiff Jimenez typically, but not always, received a thirty minute meal break.

24.     Throughout his employment, during several workdays each workweek, Defendant Southwest required Plaintiff Jimenez to work additional hours beyond his scheduled 12:30 a.m. shift, often requiring him to work until between 1:30 a.m. and 4:30 a.m., though sometimes he worked even later.  As a result, Plaintiff Jimenez commonly worked in excess of forty hours each workweek, often working eight or more extra hours beyond forty hours during each workweek.

25.     During certain months, including June and August 2022, Defendant Southwest required Plaintiff Jimenez to work from 4:00 p.m. until between 3:30 a.m. until 4:30 a.m. during most of his workdays, though sometimes he worked even later.  As a result, Plaintiff Jimenez commonly worked twelve to twenty extra hours in excess of forty hours, or sometimes even more hours, during each workweek during these periods.

26.     Throughout his employment, Defendant Southwest also required Plaintiff Jimenez to work additional shifts during certain workweeks, thereby requiring him to work more than five workdays during those workweeks.

27.     Accordingly, Defendant Southwest required Plaintiff Jimenez to work, and Plaintiff Jimenez did regularly work, in excess of forty hours per workweek and often worked between 48 hours and 60 hours, and sometimes even more hours, during each workweek.

28.     For example, during the period of July 16, 2022 and July 31, 2022, Defendant Southwest required Plaintiff Jimenez to work 96.7 hours, including more than forty hours of work performed during both workweeks within this pay period.

29.     As a second example, during the period of June 16, 2022 until June 30, 2022, Defendant Southwest required Plaintiff to work on June 18, 2022 from 4:00 p.m. until 12:30 a.m., on June 19, 2022 from 4:00 p.m. until 1:15 a.m., on June 20, 2022 from 4:00 p.m. until 12:30 a.m., on June 21, 2022 from 4:00 p.m. until 2:15 a.m., and on June 20, 2022 from 4:00 p.m. until 12:30 a.m.  Accordingly, Defendant Southwest required Plaintiff Jimenez to work, and Plaintiff Jimenez did work, 42.5 hours this workweek, even after deducting time for his meal periods.

30.     Throughout his employment, Defendant Southwest paid Plaintiff Jimenez an hourly rate of pay of $17.00 per hour for his hours worked, including for his hours worked in excess of forty hours in a single workweek.

31.     Indeed, Defendant Southwest only paid additional compensation in excess of Plaintiff Jimenez's regular rate of pay in certain rare, specified circumstances where additional forms of compensation were granted, such as when Plaintiff Jimenez was required to work through his meal period.

32.     Throughout his employment, Defendant Southwest failed to pay Plaintiff Jimenez for his hours worked in excess of forty hours per week at his statutorily-mandated overtime rate of pay of one and one half times his regular rate of pay.  Instead, Defendant paid Plaintiff at his straight-time, regular rate of pay for all or most of his hours worked in excess of forty hours each

workweek, in violation of the FLSA and NYLL.  At times, Defendant failed to compensate Plaintiff at all for some hours worked after forty during certain workweeks.

33.     For example, during the period of July 16, 2022 and July 31, 2022, Defendant Southwest required Plaintiff Jimenez to work 96.7 hours and paid him for 91.2 hours during this two-week pay period at his regular rate of pay.

34.     During his employment, Plaintiff Jimenez informed Defendant Southwest of its statutory obligation to pay overtime compensation to its employees and complained regarding Defendant Southwest's failure to pay lawful overtime compensation to him.  Despite this, Defendant Southwest explicitly rejected Plaintiff Jimenez's demand to pay him overtime compensation, failed to remedy its violations of the FLSA and NYLL and continued to refuse to pay its employees, including the Plaintiff, Class Members, and FLSA Collective Action Plaintiffs, overtime compensation.

35.     Throughout his employment, Defendant Southwest tracked Plaintiff Jimenez's daily hours worked through its timeclock system.  However, despite doing so, Defendant Southwest frequently failed to timely compensate Plaintiff Jimenez at any rate of pay for certain hours worked during multiple workweeks.

36.     Throughout his employment, due to Defendant Southwest's practice of failing to compensate Plaintiff Jimenez for certain hours worked during multiple workweeks, Defendant Southwest has deprived Plaintiff Jimenez of compensation for many hours worked during his workweeks at his regular agreed upon rate of pay or his overtime rate of pay, in violation of the FLSA and NYLL, and in violation of New York common law.

37.     Defendant Southwest willfully disregarded and purposefully evaded record keeping requirements of the FLSA and NYLL by intentionally failing to pay Plaintiff Jimenez his

compensation earned in accordance with his hours worked and by failing to pay Plaintiff Jimenez overtime compensation despite being informed of its obligation to pay such compensation.

38.     Defendant Southwest failed to provide Plaintiff Jimenez with accurate statements of his wages earned, including his correct amount of regular and overtime hours worked, overtime rate of pay, and gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3).

39.     Throughout his employment, Plaintiff Jimenez, as a ramp agent, was responsible primarily for loading, stacking and unloading luggage and cargo from airplanes.  Plaintiff handled luggage or cargo consisting of commercial goods, laboratory specimens and materials, airmail cargo, freight, and other goods; lifted and moved heavy containers and other goods; assisted with directing and parking the airplanes at the terminal; and operated vehicles and equipment used for moving cargo, luggage and aircraft.  Over twenty-five percent of Plaintiff Jimenez's duties require physical tasks, including but not limited to, bending, lifting, stacking, carrying pushing, pulling, walking, and standing for long periods of time.

40.     Throughout the statutory period, Defendant Southwest employs and has employed numerous hourly-paid ramp agents, like Plaintiff, who are responsible primarily for loading, stacking and unloading luggage and cargo from airplanes, including containers of, *inter alia*, luggage or cargo consisting of commercial goods, laboratory specimens and materials, airmail cargo, freight, and other goods; lifting and moving heavy containers and goods; assisting with directing and parking the airplanes; and operating vehicles and equipment used for moving cargo, luggage and aircraft.  Over twenty-five percent of ramp agents' duties require physical tasks, including but not limited to, bending, lifting, stacking, carrying pushing, pulling, walking, and standing for long periods of time.

41.     Throughout the statutory period, Defendant Southwest employs and has employed numerous hourly-paid ticket counter agents, who are responsible primarily for lifting, carrying and moving luggage and cargo for loading on airplanes, which containers of, *inter alia*, luggage or cargo consisting of commercial and other goods; lifting and moving heavy containers and goods; and assisting customers with checking into their flights.  Over twenty-five percent of ticket counter agents' duties require physical tasks, including but not limited to, bending, lifting, stacking, carrying pushing, pulling, walking, and standing for long periods of time.

42.     Throughout the statutory period, Defendant Southwest employs and has employed numerous hourly-paid operations agents, who are responsible primarily for lifting, carrying and moving luggage and cargo on and off of airplanes, which containers of, *inter alia*, luggage or cargo consisting of commercial and other goods, lifting and moving heavy containers and other goods; assisting with moving and transporting clients with limited mobility on and off of airplanes; assisting customers with boarding and disembarking from airplanes; and assisting customers with checking into their flights.  Over twenty-five percent of operations agents' duties require physical tasks, including but not limited to, bending, lifting, stacking, carrying pushing, pulling, walking, and standing for long periods of time.

43.     Throughout the statutory period, Plaintiff Jimenez and Defendant Southwest's hourly-paid ramp agents, ticket counter agents, and operations agents loaded and unloaded luggage, passenger cargo, commercial cargo, laboratory specimens and materials, airmail cargo, freight, and other commercial goods for transportation on Defendant Southwest's airplanes across state lines between New York and other states or territories, and between New York and foreign countries.

44.     Throughout their employment, Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs – who all worked as hourly-paid ramp agents, ticket counter agents, or operations agents – regularly performed manual tasks during the majority of their hours worked and, therefore, Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs spent more than twenty-five percent of their hours worked each week performing such manual tasks.

45.     Throughout their employment, Defendant Southwest paid Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs their wages earned on a bi-monthly basis.

46.     Thus, throughout their employment, Defendant Southwest failed to timely pay Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs their wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191.

47.     Additionally, because Defendant Southwest failed to pay Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs for certain hours worked during their workweeks, thereby failing to pay them at any rate of pay for certain hours of work during multiple workweeks, Defendant Southwest failed to timely pay Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs their wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned in violation of NYLL § 191.

48.     Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed, and they are temporarily deprived of their earned wages.

49.     Each time Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs received late compensation for the work that they performed, Defendant Southwest underpaid them for the work they performed.

50.     Every time that Defendant Southwest failed to pay Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs their wages earned within seven days of the end of their workweeks, Defendant Southwest deprived them of the use of money that belonged to them.  As a result, Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy.

51.     By way of example, these delayed wages prevented Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

52.     By Defendant Southwest's failure to pay Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs their wages earned within seven days of the end of their workweeks and retaining money that belonged to them, Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs lost the time value of money.

53.     Additionally, Defendant Southwest's delayed payment of wages forced Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs to forgo purchasing goods and services until a later time after their receipt of their late paid wages.  Because of inflation, being an ever increasing scourge throughout the Covid-19 pandemic and recent events, Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

54.     By retaining these wages earned beyond the timeframes set by NYLL § 191, Defendant Southwest benefitted from the time value of money and their free use of such funds, at the expense of Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs.  For example, during the interval of these delayed wage payments, Defendant Southwest was free to utilize those funds to purchase goods and services, pay rent or mortgages on its facilities, pay installment payments and purchase fuel for its company-owned vehicles and airplanes, pay for marketing and other business expenses, and accrue interest on those funds in its business accounts.

55.     Defendant Southwest's failure to timely pay wages earned caused Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs to suffer the same or similar harms.

56.     Defendant Southwest treated and paid Plaintiff Jimenez, Class Members and FLSA Collective Action Plaintiffs in the same or similar manner.

## COLLECTIVE ACTION ALLEGATIONS

57.     At all times relevant, Plaintiff Jimenez and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant Southwest's decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime compensation for hours worked in excess of forty (40) hours each week and by failing to timely pay their wages earned.

58.     Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiff Jimenez, who have been underpaid or who suffered from delayed payment of certain wages in violation of the FLSA.  The named Plaintiff is representative

of those other workers and is acting on behalf of the Defendant Southwest's current and former employees' interests as well as his own interest in bringing this action.

59.     Plaintiff Jimenez seeks to proceed as a collective action with regard to the First Claim for Relief, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following similarly situated employees:

> All persons who are currently, or have been employed by the Defendant as a non-exempt, hourly-paid ramp agent, ticket counter agent, or operations agent, and/or in any other similarly-situated position, within the State of New York at any time during the three (3) years prior to the filing of their respective consent forms ("FLSA Collective Action Plaintiffs").

60.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).  The FLSA Collective Action Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant Southwest.  These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, persons similarly situated to Plaintiff Jimenez, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendant.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff Jimenez brings his Second through Seventh Claims for Relief on behalf of himself, individually, and a class of persons under Fed. R. Civ. P. Rule 23 consisting of all persons who are currently, or have been, employed by Defendant Southwest as a non-exempt, hourly-paid ramp agent, ticket counter agent, or operations agent, and/or in any other similarly-situated position, within the State of New York at any time during the six (6) years prior to the filing of

this Complaint through the date of judgment (hereinafter referred to as the "Class" or the "Class Members").

62.     The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendant Southwest.  The hours assigned and worked, the positions held, and rates of pay for each Class Member may also be determinable from Defendant Southwest's records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant Southwest.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

63.     The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendant Southwest, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Defendant as an hourly-paid ramp agent, ticket counter agent, or operations agent, and/or in any other similarly situated position, within the State of New York at any time during the six (6) years prior to the filing of this Complaint.

64.     Defendant Southwest has acted and/or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

65.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendant Southwest failed and/or refused to pay Plaintiff Jimenez and the Class Members overtime compensation for hours worked in excess of forty hours in a single workweek;

14

(b)     Whether Defendant Southwest failed and/or refused to pay Plaintiff Jimenez and the Class Members for all hours worked up to forty hours per week at their agreed upon rates of pay;

(c)     Whether Defendant Southwest failed and/or refused to pay Plaintiff Jimenez and the Class Members in accordance with their hours worked;

(d)     Whether Defendant Southwest's failure and/or refusal to pay Plaintiff Jimenez and the Class Members for all hours worked constitutes violations of the New York common law;

(e)     Whether Defendant Southwest paid Plaintiff Jimenez and the Class Members on a bi-monthly basis in violation of NYLL § 191;

(f)     Whether Defendant Southwest failed to pay Plaintiff Jimenez and the Class Members weekly and not later than seven calendar days after the end of the week in which the wages are earned;

(g)     Whether Defendant Southwest failed to furnish Plaintiff Jimenez and the Class Members with accurate wage statements for each pay period;

(h)     Whether Defendant Southwest's general practice of failing and/or refusing to pay Plaintiff Jimenez and the Class Members overtime pay, wages at their agreed upon rates of pay, or other required compensation, was done willfully and/or with reckless disregard of the state wage and hour laws;

(i)     Whether Defendant Southwest took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiff Jimenez and the Class Members;

(j)     Whether Defendant Southwest kept true and accurate time records for all hours worked by Plaintiff Jimenez and the Class Members;

(k)     Whether Defendant Southwest failed to keep and maintain true and accurate payroll records for all hours worked by Plaintiff Jimenez and the Class Members;

(l)     Whether Defendant Southwest's policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

(m)     What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

66.     Plaintiff Jimenez's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All of the Class Members were subject to the same corporate practices of Defendant Southwest.  Defendant Southwest's corporate-wide policies and practices affected all Class Members similarly, and Defendant Southwest benefited from the same type of unfair and/or wrongful acts as to each Class Member.  Additionally, Defendant Southwest's violations of the NYLL, including the failure to timely pay wages earned, and New York common law caused Plaintiff Jimenez and the Class Members to suffer the same or similar harms.  Plaintiff Jimenez and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

67.     Plaintiff Jimenez is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

68.     Plaintiff Jimenez has retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

69.     A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendant, especially in light of the relatively minimal damages owed to each individual putative Class Member.

70.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  The adjudication of individual litigation of claims would result in a great expenditure of Court and

public resources; however, treating the claims as a class action would result in a significant savings of these costs.  The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Class members, establishing incompatible standards of conduct for the Defendant.  Moreover, the issues in this action can be decided by means of common, class-wide proof.

71.     The members of the Class have been damaged and are entitled to recovery as a result of Defendant Southwest's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

72.     In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendant Southwest's practices.

73.     Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide Class Members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

**FIRST CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**

74.     Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

75.     Defendant employed Plaintiff and persons similarly situated to Plaintiff for workweeks longer than forty (40) hours and willfully failed to compensate them for all of their hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times their regular hourly rate, in violation of the FLSA.

76.     Defendant's violations of the FLSA have been willful and intentional.

77.     Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

78.     As a result of Defendant's unlawful acts, Plaintiff and persons similarly situated to Plaintiff are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs of this action.

## SECOND CLAIM FOR RELIEF
## (NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)

79.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

80.     Defendant employed Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action for workweeks longer than forty (40) hours and failed to compensate the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action for all hours worked in excess of forty (40) hours per week, at a rate of at least one and one-half times their regular hourly rate, in violation of the NYLL.

81.     By Defendant's failure to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action proper overtime wages for hours worked in excess of 40 hours per week, Defendant violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

82.     Defendant's violations of the NYLL have been willful and intentional.

83.     Due to Defendant's violations of the New York Labor Law, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover from Defendant unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of this action, and interest as permitted by law.

## THIRD CLAIM FOR RELIEF
## (FAILURE TO PAY WAGES DUE UNDER NYLL)

84.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

85.     NYLL §§ 190, 191, 198 and 663(1) require that employers pay wages to their employees in accordance with their agreed terms of employment.

86.     Defendant failed to compensate Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action at their regular rate of pay for certain hours that they worked in accordance with their agreed terms of employment.

87.     Defendant's violations of the NYLL have been willful and intentional.

88.     Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover for all hours worked for Defendant but for which Defendant did not provide compensation at their regular rate of pay.

89.     Plaintiff, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to liquidated damages, attorneys' fees, costs of this action, and interest for Defendant's failure to pay wages in accordance with their agreed terms of employment.

**FOURTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 191)**

90.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

91.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, were manual workers as defined by the NYLL.

92.     Defendant was required to pay the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, their compensation on a weekly basis, and not later than seven calendar days after the end of the week in which the wages were earned.

93.     Defendant failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiffs who opt into this action, their wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191.

94.     Defendant's violations of the NYLL have been willful and intentional.

95.     Due to Defendant's violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to statutory damages equal to the total amount of the delayed wages, attorneys' fees and costs of this action.

**FIFTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(3))**

96.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

97.     Defendant failed to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with accurate statements of their wages earned, including their correct overtime rate of pay, their amount of regular and overtime hours worked, gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3).

98.     Due to Defendant's failure to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action with accurate wage statements with their wages as required by NYLL § 195(3), Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to statutory damages, reasonable attorneys' fees and costs of this action.

**SIXTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**

99.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

100.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed work for the benefit of Defendant, at Defendant's behest.  However, Defendant failed to compensate Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action at their regular rate of pay or at any rate of pay for certain hours that they worked in accordance with their agreed terms of employment.  By doing so, Defendant retained monies that they were required to pay to Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action for work that they performed, as required by Defendant.

101.    Due to Defendant's conduct in violation of New York common law, Defendant was enriched at the expense of Plaintiff, Class Members and any FLSA Collective Action Plaintiff who

opts-into this action and it is against equity and good conscience to permit Defendant to retain what is sought to be recovered.

102. Due to Defendant's conduct in violation of New York common law, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to costs of this action and interest as permitted by law.

## SEVENTH CLAIM FOR RELIEF
## (QUANTUM MERUIT)

103. Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

104. Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed valuable services for Defendant in good faith, at Defendant's behest, which were accepted by Defendant.

105. Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed valuable services for Defendant with the expectation that they would be compensated for their work.

106. Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to the recovery of the reasonable value of the services that they provided to Defendant, Defendant was enriched at the expense of Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, and it is against equity and good conscience to permit Defendant to retain what is sought to be recovered.

107. Due to Defendant's conduct in violation of New York common law, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to costs of this action and interest as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Collective Action Plaintiffs and Class Members pray for the following relief:

i.    Issuance of an order restraining Defendant from any retaliation against Plaintiff, Class Members and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

ii.   Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

iii.  Designation of this action as an FLSA collective action on behalf of the Plaintiff and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv.   Certification of a class action pursuant to Fed. R. Civ. P. 23;

v.    Awarding unpaid wages and an additional and equal amount as liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi.   Awarding unpaid wages, including but not limited to unpaid overtime pay, unpaid wages owed at their agreed upon rates of pay, or other forms of compensation, and

additional and equal amount as liquidated damages, pursuant to the NYLL and Department of Labor Regulations;

vii.    Awarding damages pursuant to NYLL §§ 191, 198;

viii.   Awarding damages pursuant to NYLL § 195(3);

ix.     Awarding damages relating to the violations of the New York common law with respect to claims for unjust enrichment and quantum meruit;

x.      Awarding pre- and post-judgment interest as permitted by law;

xi.     Awarding all attorneys' fees incurred in prosecuting these claims;

xii.    Awarding all costs incurred in prosecuting these claims; and

xiii.   Granting such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
   September 7, 2022

         LAW OFFICE OF PETER A. ROMERO PLLC
         *Attorneys for Plaintiff*
         490 Wheeler Road, Suite 250
         Hauppauge, New York 11788
         Tel.: (631) 257-5588

By:   _____
         DAVID D. BARNHORN, ESQ.
         PETER A. ROMERO, ESQ.